# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>Xceligent, Inc.<br>                Debtor. | Chapter 7<br>Case No. 17-12937 (CSS)<br><br>**Objection Deadline: November 6, 2019 at 4:00 p.m. (ET)**<br>**Hearing Date:  November 13, 2019 at 10:45 a.m. (ET)** |
| In re:<br>ePropertyData.com, LLC<br>                Debtor. | Chapter 7<br>Case No. 17-12938 (CSS) |
| In re:<br>Karnes Research Company, LLC<br>                Debtor. | Chapter 7<br>Case No. 17-12939 (CSS) |

**TRUSTEE'S MOTION FOR APPROVAL OF GLOBAL SETTLEMENT
AGREEMENT WITH COSTAR ENTITIES AND CERTAIN INSURERS**

Alfred T. Giuliano, as chapter 7 trustee (the "Trustee") for the estates (the "Estates") of debtors Xceligent, Inc. ("Xceligent"), ePropertyData.com, LLC ("ePropertyData"), and Karnes Research Company, LLC ("Karnes") (collectively, the "Debtors"), hereby moves for entry of an order approving a certain settlement by and among (i) the Trustee on behalf of the Estates, (ii) CoStar (as defined below), and (iii) the Insurers (as defined below), and in support thereof, states as follows:

**Jurisdiction, Core Nature, And Venue**

1.   The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 1334 and 157, and the *Amended Standing Order of Reference* dated February 29, 2012, from the United States District Court for the District of Delaware.  This matter is a core proceeding within the meaning of 28 U.S.C. §157(b)(2), and the Bankruptcy Court may enter a final order consistent

with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background

2.     On December 14, 2017 (the "Petition Date"), the Debtors commenced the above-captioned bankruptcy cases (the "Bankruptcy Cases") by filing voluntary petitions under chapter 7 of the Bankruptcy Code in the Bankruptcy Court.  On or shortly after the Petition Date, the Trustee was appointed by the Office of the United States Trustee.

3.     The Debtors own insurance policies, including certain insurance policies issued by the "Insurers," which include collectively, Markel Syndicate Management Limited (in its capacity as managing agent for Syndicate 3000 at Lloyd's of London) (Policy No. AJ4135M16RAA/QK1604586), Beazley Furlonge Ltd. (Syndicates 623 and 2623) and QBE Insurance (Europe) Limited (Policy No. QK1604587), AIG Europe Limited and XL Insurance Company SE (QK1605013), QBE Underwriting Limited (Policy Nos. QK1605399), Principia Underwriting (on behalf of Pembroke Syndicate 4000, Chaucer Syndicate 1804, Novae Syndicate 2007 and Antares Syndicate 1274), Chubb (on behalf of ACE European Group Limited), AIG Europe Limited and XL Insurance Company SE (Policy No. QK1605400) and other insurers and any affiliates that may subscribe to the Policies solely in their capacities as subscribers (the policies identified here, together with Policy number QK1605014, are referred to collectively as "Policies").

4.     On March 28, 2012, LoopNet, Inc. ("LoopNet" and, together with CoStar, the "CoStar Entities"[1]), DMG Information, Inc. (an entity now known as DMGT US, Inc.), CoStar

---

[1] LoopNet merged into CoStar Realty on January 1, 2017.

Group, Xceligent Holdings, Inc., and Xceligent entered into a purchase agreement that provided, among other things, certain audit rights to both CoStar Group and Xceligent (the "Purchase Agreement").

5. On August 29, 2012, the Federal Trade Commission ("FTC") entered a consent order styled *In the Matter of CoStar Group, Inc., Lonestar Acquisition Sub, Inc., and LoopNet, Inc.* (the "FTC Order"), which imposes certain obligations on, and provides certain rights to, both CoStar Group and Xceligent.

6. On December 6, 2016, the CoStar Entities brought suit against Avion BPO Corporation, a contractor that performed work for Xceligent, and certain of its owners, officers, directors, and employees, in a case styled *CoStar Group, Inc., et al. v. Avion BPO Corporation, et al.*, Writ of Search and Seizure No. 2016-57-PSG in the Regional Trial Court, City of Pasig, Republic of the Philippines (collectively with any appeals or ancillary actions therefrom, the "Philippines Civil Action"), and *CoStar Group, Inc., et al. v. Avion BPO Corporation, et al.*, IPV No. 10-2017-00001 in the Intellectual Property Office of the Philippines Bureau of Legal Affairs (collectively with any appeals or ancillary actions therefrom, the "Philippines IPO Action").

7. On December 7, 2016, the CoStar Entities brought suit against another contractor that performed work for Xceligent, MaxVal Technologies Pvt. Ltd., in India in a case styled *CoStar Group, Inc., et al. v. MaxVal Technologies Pvt. Ltd.*, Civil Suit No. 7 of 2016 (collectively with any appeals or ancillary actions therefrom, the "India Action").

8. On December 12, 2016, the CoStar Entities brought suit against Xceligent in the United States District Court for the Western District of Missouri, in a case styled *CoStar Group, Inc., et al. v. Xceligent, Inc.*, Case No. 4:16-cv-01288-FJG (the "Missouri Action" in the "Missouri Court"), in which CoStar Realty asserted claims against Xceligent for copyright

infringement and CoStar Group and LoopNet asserted claims against Xceligent for breach of contract and violations of the Computer Fraud and Abuse Act and the Digital Millennium Copyright Act.  On June 21, 2017, CoStar filed an Amended Complaint in the Missouri Action against Xceligent asserting claims for copyright infringement, breach of contract, unfair competition, and violations of the Computer Fraud and Abuse Act and the Digital Millennium Copyright Act (the "Amended Complaint").

9.	On June 28, 2017, Xceligent filed its Answer to the Amended Complaint and Counterclaims, asserting claims against CoStar for violations of the Sherman Act and the Lanham Act, defamation (libel), and injurious falsehood (the "Estates' Counterclaims").

10.	On October 19, 2017, CoStar brought suit against Xceligent's contractor RE BackOffice, Inc. in the United States District Court for the Western District of Pennsylvania, in a case styled *CoStar Group, Inc., et al. v. RE BackOffice, Inc.*, No. 2:17-cv-01354-AJS (the "Pennsylvania Action" in the "Pennsylvania Court"), in which CoStar Realty asserted claims against RE BackOffice, Inc. for contributory copyright infringement and vicarious copyright infringement, and CoStar asserted claims against RE BackOffice, Inc. for conspiracy to violate the Computer Fraud and Abuse Act and civil conspiracy to engage in unfair competition in connection with work that RE BackOffice, Inc. performed for Xceligent.

11.	On October 23, 2017, the Pennsylvania Court entered judgment in favor of CoStar and against Xceligent's agent, RE BackOffice, Inc., on counts of contributory copyright infringement, vicarious copyright infringement, conspiracy with Xceligent to violate the Computer Fraud and Abuse Act, and civil conspiracy with Xceligent to engage in unfair competition.

12. The Debtors ceased business operations (including operation of the Xceligent Databases, as defined below) on or before the Petition Date.

13. On December 27, 2017, the Missouri Court entered an order staying the Missouri Action, which remains stayed.

14. On January 10, 2018, CoStar Realty filed proof of claim number 88 against the Estate of Xceligent asserting a non-priority, general unsecured claim in the amount of Four Hundred Fifty Million Dollars ($450,000,000) for damages for alleged copyright infringement by Xceligent, subject to amendment or supplementation, or the assertion of additional claims whether arising from or relating to the same or different facts, circumstances, or legal theories. On April 2, 2018, CoStar Realty amended proof of claim number 88 against the Estate of Xceligent which superseded and replaced its prior proof of claim of January 10, 2018, asserting an unliquidated, non-priority, general unsecured claim for alleged damages for copyright infringement, breach of contract, violation of the Computer Fraud and Abuse Act, violation of the Digital Millennium Copyright Act, and unfair competition by Xceligent including an estimated amount of statutory damages of at least Four Hundred Fifty Million Dollars ($450,000,000) for the copyright infringement claim (the "CoStar Realty Amended Proof of Claim").

15. On April 2, 2018, CoStar Group filed proof of claim number 357 against the Estate of Xceligent asserting an unliquidated, non-priority, general unsecured claim for alleged damages for copyright infringement, breach of contract, violation of the Computer Fraud and Abuse Act, violation of the Digital Millennium Copyright Act, and unfair competition by Xceligent (the "CoStar Group Proof of Claim" and, collectively with the CoStar Realty Amended Proof of Claim, the "CoStar Proofs of Claim").

5

16.     On April 16, 2018, in the India Action, the District Court of Thane, India, entered a permanent injunction against defendant MaxVal Technologies Pvt. Ltd., Xceligent's contractor, precluding MaxVal from accessing CoStar websites and databases for competitive purposes or copying CoStar content without valid authorization, approving the financial terms of MaxVal's case resolution, and dismissing with prejudice the counterclaims against CoStar.

17.     On October 9, 2018, the monitor appointed under the FTC Order issued a report to the FTC, CoStar, and Xceligent regarding the monitor's audit of Xceligent's systems (the "FTC Report"); the FTC Report concluded that 38,489 images found in those systems had been "derived improperly by Xceligent from the Database of Costar".

18.     On October 29, 2018, the owners, senior management, and directors of Avion BPO Corporation were indicted in The Philippines in criminal proceedings relating to work Avion performed on behalf of Xceligent, proceedings that are pending before the Regional Trial Court, First Judicial Region, Laoag City, Republic of the Philippines in a case styled *CoStar Group, Inc., et al. v. Von Ryan Nagasangan, et al.*, Criminal Case. No. 18760, I.S. No. XVI-INV-17J-00288 (collectively with any appeals or ancillary actions therefrom, the "Philippines Criminal Action" and, collectively with the India Action, the Missouri Action, the Pennsylvania, the Philippines Civil Action, the Philippines IPO Action, and the Bankruptcy Cases, the "Litigation").

19.     Following initiation of the Litigation, Xceligent sought coverage under the Policies, to which Insurers asserted various defenses and reservations of rights.

20.     The Trustee, CoStar, and the Insurers (collectively, the "Parties") have engaged in extensive arm's length negotiations, which resulted in a global settlement set out in a certain

6

settlement agreement (the "Settlement," set out in the "Settlement Agreement").[2] A copy of the Settlement Agreement is attached to this Motion as Exhibit "A" and incorporated herein by reference.

21.     The Settlement Agreement includes the following principal terms, which are subject to Bankruptcy Court approval and other conditions as set out in the Settlement Agreement:

   a. Effectiveness.  The Settlement shall become effective immediately as of the date on which each of the conditions of effectiveness set forth in the Settlement Agreement (including, without limitation, approval of the Settlement by a Final Order in form and substance reasonably acceptable to the Parties) has been waived or satisfied in accordance with the terms thereof (the "Effective Date").  If the Effective Date does not occur within ninety (90) days following execution of the Settlement Agreement by all Parties, the Trustee and CoStar shall each have the option to terminate the Settlement Agreement by written notice to the other, and upon such termination the Settlement Agreement shall be of no force or effect, *ab initio*, without any further action by any of the Parties.

   b. Lifting of the Bankruptcy Stay and Dismissal With Prejudice.  Upon the Effective Date, the automatic stay imposed by section 362(a) of the Bankruptcy Code shall be lifted so as to permit the filing and entry, in the Missouri Action of the (i) Joint Factual Stipulation by Plaintiffs Co-Star Group Inc. and Co-Star Realty Information, Inc. and Defendant Xceligent, Inc. attached to the Settlement Agreement as Exhibit B (the "Xceligent Stipulation") and (ii) the Joint Stipulation for Lifting of the Stay and Entry of Proposed Judgment attached to the Settlement Agreement as Exhibit C providing for the entry of a permanent injunction (the "Permanent Injunction") and entry of a monetary judgment (the "Monetary Judgment") in the form annexed to said Exhibit C as Exhibit 1 (collectively, the Permanent Injunction and the Monetary Judgment are the "Proposed Judgment").

   c. Payment.  After the Effective Date and within seven (7) days of the entry of the Proposed Judgment in the Missouri Action (the "Payment Date") the Insurers shall pay or cause to be paid to the Trustee (pursuant to written wire instructions to be provided by the Trustee to the Insurers) the sum of Eleven Million Two Hundred Fifty Thousand Dollars ($11,250,000) (the "Global Settlement Payment").  The Trustee shall disburse to CoStar the sum of Ten Million Seven Hundred Fifty Thousand Dollars ($10,750,000) from the Global Settlement Payment as payment for the consideration provided by CoStar under this Settlement Agreement (the "CoStar

---

[2] Capitalized terms used in this Motion and not otherwise defined herein shall have the meanings provided in the Settlement Agreement.

Settlement Share") within three (3) business days of the receipt of the Global Settlement Payment, pursuant to the wire instructions provide by CoStar to the Trustee, with the remainder being retained by the Estate. The Global Settlement Payment, including the CoStar Settlement Share, constitutes a settlement payment that relates to alleged injuries separate and distinct from any harms or injuries alleged against AIR, Avion, MaxVal, REBO, Unido Digital, UruIT, any other contractor or agent that Xceligent hired, retained, or paid any amount of money at any time, any Former Xceligent Individuals, or any Xceligent customer or client.[3]

   d. Releases. The Settlement Agreement provides:

      i. "CoStar Releasees" means CoStar Group and CoStar Realty, and each of their current or former subsidiaries and affiliates, and the current and former partners, shareholders, directors, officers, associates, employees, advisors, service providers, investors, members, managers, agents, consultants, attorneys, law firms, representatives, sureties, heirs, executors, administrators, trustees, beneficiaries, predecessors, successors and assigns of any of them.

      ii. "Xceligent Affiliates" means all former direct or indirect parent corporations of Xceligent, including DMG Information, Inc., DMGT US, Inc., Daily Mail and General Trust PLC and its subsidiary companies and associated companies. An "associated company" as referenced herein is any company in which DMG Information, Inc., DMGT US, Inc., or Daily Mail and General Trust PLC either directly or indirectly through one of its subsidiaries holds between 20% and 50% of the issued share capital.

      iii. "Estate Releasees" means the Trustee, the Estates, the Debtors, the Insurers, the Xceligent Affiliates, and each of their current or former subsidiaries and affiliates, and the current and former partners, shareholders, directors, officers, associates, employees, advisors, service providers, investors, members, managers, agents, consultants, attorneys, law firms, representatives, sureties, heirs, executors, administrators, trustees, beneficiaries, predecessors, successors and assigns of any of them, except as specifically excluded below. Estate Releasee specifically *excludes* AIR, Avion, MaxVal, REBO, Unido Digital, UruIT, any other contractor or agent that Xceligent hired, retained, or paid any amount of money at any time, and any Xceligent customer or client. Estate Releasee further specifically *excludes* any former Xceligent executive, manager, director, officer, or employee ("Former Xceligent Individuals"), but

---

[3] As set forth in the Settlement Agreement, the Global Settlement Payment constitutes a settlement payment that relates to alleged injuries separate and distinct from any harms or injuries alleged against AIR, Avion, MaxVal, REBO, Unido Digital, UruIT, any other contractor or agent that Xceligent hired, retained, or paid any amount of money at any time, any Former Xceligent Individuals, or any Xceligent customer or client. The Trustee, on behalf of the Estates, is entering into the Settlement Agreement for the benefit of the Debtors' Estates, and not for the benefit of AIR, Avion, MaxVal, REBO, Unido Digital, UruIT, any other contractor or agent that Xceligent hired, retained, or paid any amount of money at any time, any Former Xceligent Individuals, or any Xceligent customer or client.

*only* as regards to Claims CoStar may elect to assert in the future against any such Former Xceligent Individuals where such claims are based solely on actions taken by, participated in, acquiesced to, directed or otherwise condoned by such Former Xceligent Individuals, at or after the time of their separation from Xceligent in 2017, to intentionally, dishonestly, fraudulently, criminally or maliciously misappropriate CoStar's data or copyrighted photographs, or intentionally, dishonestly, fraudulently, criminally, or maliciously misappropriate, misuse or willfully infringe CoStar's copyrighted photographs in connection with any of the Former Xceligent Individuals' ongoing or future business endeavors, or engage in other economically tortious conduct including wrongfully interfering with CoStar's business or conspiring to injure CoStar's business.  CoStar, may, in addition to any other relief (e.g., injunctive or other equitable relief), obtain by way of future settlement or judgment in total, across any and all of the foregoing claims against Former Xceligent Individuals, no more than the aggregate total sum of Three Million Dollars ($3,000,000) in damages as compensation from any and all such Former Xceligent Individuals (all expressly *excluded* claims and relief sought by CoStar against Former Xceligent Individuals collectively "Non-Released Claims against Former Xceligent Individuals").

iv. Release of Estate Releasees by CoStar Releasors.  Effective upon the Insurers making the Global Settlement Payment in full no later than the Payment Date, the CoStar Releasors shall release and forever discharge the Estate Releasees from and against any and all Claims which, as of the Effective Date, the CoStar Releasors had, then have, or claim to have against any Estate Releasee asserted in, arising out of, or related to the Litigation, the Policies, including the existence or non-existence of coverage under the Policies for any Claims asserted or that could have been asserted in the Litigation, or related to the manner in which Insurers or their counsel handled, settled, defended or responded to any formal or informal requests, demands or threatened claims by CoStar, the Trustee, Xceligent, or Estates of Debtors, including claims for reimbursement of pre-bankruptcy defense costs or fees incurred in the Litigation, bad faith or extra-contractual claims, or Claims arising out of or relating to any Estate Releasee's decision not to continue to preserve the Xceligent Databases following the Effective Date (as Insurers are permitted to stop paying for storage of Xceligent Databases upon the Bankruptcy Court's approval of this Settlement Agreement), other than Non-Released Claims against Former Xceligent Individuals and any Claims arising under this Settlement Agreement, the Approval Order, any policy issued by any Insurer to or for the benefit of any CoStar Releasor, or the Proposed Judgment, excluding the monetary damages awarded therein (such released Claims, collectively, the "CoStar Released Claims").

v. Release of CoStar Releasees by Estate Releasors.  Effective upon the Insurers making the Global Settlement Payment in full no later than the Payment Date,

        the Estate Releasors hereby release and forever discharge the CoStar Releasees from and against any and all Claims which, as of the Effective Date, any Estate Releasor had, now has, or claims to have against any CoStar Releasee asserted in, arising out of, or related to the Litigation, other than any Claims arising under the Settlement Agreement, the Approval Order, or the Permanent Injunction (such released Claims, collectively, the "<u>Estate Released Claims</u>"). Without limiting the generality of the foregoing, the Estate Released Claims include the Estates' Counterclaims and any other Claims that could have been brought against a CoStar Releasee in the Missouri Action or the Bankruptcy Cases.

    vi.    <u>Scope of Releases</u>. The foregoing releases shall not (i) operate to discharge the obligations of the Parties set forth in the Settlement Agreement itself, (ii) serve to release any Claim that any Party may have to enforce the Settlement Agreement, the Approval Order, the Proposed Judgment (other than the monetary damages awarded therein) or any future contract between the Trustee and CoStar; or (iii) operate to discharge or modify any applicable obligations of Xceligent or its former counsel in the Protective Order. Further, for clarity, nothing in the Settlement Agreement shall be construed to (iv) release any Claims that the Trustee, the Estates, Insurers or CoStar has or may have against AIR, Avion, MaxVal, REBO, Unido Digital, UruIT, any other contractor or agent that Xceligent hired, retained, or paid any amount of money at any time, or any Xceligent customer or client, (v) impact in any way the Philippines Criminal Action or any other criminal matter having any relation to the Litigation, (vi) confer any license for any Party or non-party to use, publish, possess, or otherwise control any CoStar Content, as defined in the Proposed Judgment, (vii) serve to release any Non-Released Claims against Former Xceligent Individuals, or (viii) serve to release any Claims of the Trustee and the Estates of the Debtors against the Insurers arising out of or related to the Litigation, the Policies (including the existence or non-existence of coverage under the Policies for any Claims asserted or that could have been asserted in the Litigation), or the manner in which the Insurers or their counsel handled, settled, defended or responded to any formal or informal requests, demands or threatened claims by the Trustee, Xceligent, and Estates of Debtors, including claims for reimbursement of pre-bankruptcy defense costs or fees incurred in the Litigation, bad faith or extra-contractual claims, which Claims are the subject of a separate settlement agreement being entered into by the Trustee with the Insurers substantially contemporaneously herewith (the "<u>Reimbursement Settlement Agreement</u>").

    vii.    <u>Covenant Not to Sue</u>. On behalf of itself and all other Releasors on whose behalf each Party acts, each Party covenants and agrees that neither such Party nor any such Releasor will sue or bring any action or cause of action, including by way of third-party claim, crossclaim or counterclaim, against any

10

      of such Releasor's respective Releasees in respect of any Released Claim (including any counterclaims).

   e. <u>Treatment of Documents</u>.  The Parties will continue to comply with the terms of the Protective Order entered in the Missouri Action and it is agreed that the Trustee's attorneys employed by the law firm of Cozen O'Connor shall be considered as In-house Counsel under the terms of the Protective Order.

   f. <u>Third Party Beneficiaries</u>.  Nothing in the Settlement Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties, the Releasees, and their respective successors and assigns, any right, remedy or claim under or by reason of the Settlement Agreement or any covenant, condition or stipulation thereof, and the covenants, stipulations and agreements contained in the Settlement Agreement are and shall be for the sole and exclusive benefit of the Parties, the Releasees, and their respective successors and assigns.

## Summary of Relief Requested

22.    The Trustee requests that the Bankruptcy Court enter an order: (i) approving the Settlement Agreement; (ii) authorizing the Trustee to enter into the Settlement Agreement and take any actions necessary to carry out the terms thereof; and (iii) providing any other and further relief that may be appropriate.

## Applicable Authority

23.    Bankruptcy Code section 105 authorizes this Court "to issue any order, process or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code." 11 U.S.C. § 105(a).  Bankruptcy Rule 9019 governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019.

24.    The settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored."  <u>In re World Health Alternatives,</u>

Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006); see also In re Penn Central Transp. Co., 596 F.2d 1102, 1113 (3d Cir. 1979) ("In administrating reorganization proceedings in an economical and practical matter it will often be wise to arrange the settlement of claims . . . ." (quoting In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968)).

25.     In determining the fairness and equity of a compromise in bankruptcy, the United States Court of Appeals for the Third Circuit has stated that it is important that the bankruptcy court "apprise[] [it]self of all facts necessary [to form] an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated, [and] estimate . . . the complexity, expense and likely duration of such litigation . . . all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise." Penn Central, 596 F.2d at 1114; see also In re Marvel Entm't Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (describing the "ultimate inquiry to be whether the compromise is fair, reasonable, and in the interest of the estate").

26.     The United States Court of Appeals for the Third Circuit has enumerated four factors that a court should consider in determining whether a compromise should be approved: "(1) the probability of success in litigation; (2) the likely difficulties in collection; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the paramount interest of the creditors." Myers v. Martin (In re Martin), 91 F.3d 389, 393 (3d Cir. 1996) (citing Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424-25 (1968)).

27.     The decision to approve a settlement "is within the sound discretion of the bankruptcy court." In re World Health Alternatives, Inc., 344 B.R. at 296; see also In re Neshaminy Office Bldg. Assoc., 62 B.R. 798, 803 (E.D. Pa. 1986), cited with approval in

Meyers v. Martin (In re Martin), 91 F.3d 389. The bankruptcy court should not substitute its judgment for that of the debtor. See In re Neshaminy Office Bldg. Assoc., 62 B.R. at 803. In assessing a request for approval of a settlement, a court should not substitute its own judgment for that of the trustee. The court is not to decide the numerous questions of law or fact raised by the litigation, but rather should canvas the issues to determine "whether the settlement fall[s] below the lowest point in the range of reasonableness." Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983), cert. denied, 464 U.S. 22 (1983); see also World Health Alternatives, 344 B.R. at 296 ("[T]he court does not have to be convinced that the settlement is the best possible compromise. Rather, the court must conclude that the settlement is 'within the reasonable range of litigation possibilities.'") (quoting Penn Central, 596 F.2d at 1114).

## Analysis

28. The settlement of the Litigation pursuant to the terms of the Settlement Agreement meets the applicable standards under Rule 9019. As discussed below, each of the applicable Martin factors set forth above weighs in favor of approving the Settlement, and the Settlement is certainly in the best interest of the Estates.

29. While the Trustee believes that the Estates may have some potentially viable defenses in the Litigation, he recognizes that the outcome would be uncertain. Other courts have already ruled in CoStar's favor in lawsuits involving Xceligent's contractors, indictments have been issued against the owners and executives of Xceligent's contractor in The Philippines, and as noted above, the FTC Report concluded that Xceligent had "derived improperly" more than 38,000 images from CoStar's database. If the Litigation were to proceed, the Insurers estimate the potential legal exposure could run into the hundreds of millions of dollars, particularly given the availability of statutory damages under the Copyright Act of up to $150,000 per infringed

13

work.  The issues, no matter how they may be decided by the applicable courts, are such that the losing party or parties are likely to pursue appellate review.  At best, the Estates' probability of success on the merits would be highly uncertain.

30. Under the circumstances, the Trustee submits that the Settlement is certainly in the best interest of the Estates.  The Settlement avoids the delays and risks described above in favor of a prompt and efficient resolution at essentially no cost to the Estates.

**Notice and Conclusion**

31. The Trustee will serve notice of this Motion on: (i) counsel for the Debtor; (ii) the Office of the United States Trustee; (iii) CoStar through its counsel; (iv) the Insurers through its counsel; (v) the Debtor's twenty largest unsecured creditors; and (vi) all parties who have requested such notice pursuant to Federal Rule of Bankruptcy Procedure 2002 as of this date (the "Notice Parties").  In light of the nature of the relief requested herein, the Trustee submits that no other or further notice need be given.

LEGAL\43359878\3 00600.9698.000/420979.000
10/22/2019

WHEREFORE, the Trustee respectfully requests that the Bankruptcy Court enter an order substantially in the form attached: (i) approving the Settlement Agreement; (ii) authorizing the Trustee to enter into the Settlement Agreement and take any actions necessary to carry out the terms thereof; and (iii) providing any other and further relief that may be appropriate.

Dated: October 22, 2019  
Wilmington, DE

COZEN O'CONNOR

/s/ *John T. Carroll, III*

_____  
John T. Carroll (No. 4060)  
1201 N. Market Street  
Suite 1001  
Wilmington, DE 19801  
Telephone: (302) 295-2028  
Fax: (302) 295-2013  
jcarroll@cozen.com

**Counsel for Alfred T. Giuliano, Chapter 7 Trustee**